**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| L. I. COMBS & SONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:09CV150-PPS |
| | ) | |
| INDIANA/KENTUCKY REGIONAL | ) | |
| COUNCIL OF CARPENTERS, a/k/a | ) | |
| INDIANA/KENTUCKY REGIONAL | ) | |
| COUNCIL OF CARPENTERS, | ) | |
| UNITED BROTHERHOOD OF | ) | |
| CARPENTERS AND JOINERS, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This action presents a dispute over the arbitrability of a grievance brought by Indiana/Kentucky Regional Council of Carpenters ("the Union") against L. I. Combs & Sons, Inc., an Indiana construction company. The grievance is based on an alleged violation of a 2006 collective bargaining agreement. The issue is whether Combs is bound by the 2006 CBA. Combs says that it is not a signatory to the CBA and thus has no responsibility under it. Combs seeks a declaratory judgment that it is not bound by the 2006 CBA and therefore is under no obligation to submit to arbitration pursuant to its terms. The Union relies upon a Memorandum of Agreement that it executed with Combs almost three decades ago ("the 1981 MOA") as the source of Combs' contractual duty to comply with the 2006 CBA.

The matter is before me now on Combs' Motion for Summary Judgment. (DE 24). Combs offers several arguments as to why it is not bound by the 2006 CBA. In particular, I find the

arguments of repudiation, lapse and laches to be persuasive, and thus summary judgment will be granted in favor of Combs.

Before delving into the facts, there is a preliminary issue concerning summary judgment procedure that I should note. The Union earlier complained that Combs had not properly set out a "Statement of Material Facts" to which the Union could respond with its own "Statement of Genuine Issues" as contemplated by Local Rule 56.1(a). Ironically, after the Union's motion to strike was denied, and the Union was given an opportunity to respond to the summary judgment motion, the Union failed to avail itself of the opportunity to expressly controvert Combs' factual assertions. As a result, pursuant to L.R. 56.1(b), "the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy."

## BACKGROUND

On June 1, 1981, Robert Rider, the bookkeeper for Combs, signed the 1981 MOA with a predecessor to the Union. (DE 24, Ex. 1). Rider was never an officer, director, or general manager of Combs. (DE 24, Ex. 2). The 1981 MOA that Rider signed on behalf of Combs states that Combs recognized the Union as the "sole and exclusive collective bargaining representative" of the employees of Combs & Sons. (DE 24, Ex. 1). The 1981 MOA stated that Combs acknowledged receipt of, and adopted, a collective bargaining agreement with the Union. The 1981 MOA further provides that either party could amend or terminate the MOA if it "notif[ied] the other in writing at least three (3) calendar months prior to the expiration of the Master Agreement adopted herein." (DE 24, Ex. 1).

Despite the acknowledgment statement in the 1981 MOA, Rider and Combs deny receiving a copy of any underlying agreement to the MOA, including the referenced "Master Agreement." (DE 24, Ex. 2–3). Combs asserts that the only reason for executing the 1981 MOA was to facilitate the continued employment of two union construction workers at a local hospital after their construction company went out of business. (DE 24, Ex. 3). The president of Combs, a member of the hospital's board, agreed to compensate the workers as a convenience to the hospital. (DE 24, Ex. 3).

After executing the 1981 MOA, Combs may have retained Union employees and contributed to union employee benefit plans until some time around 1990. (DE 24, Ex. 6). After that, the Union did not interact with Combs in any way. Then, nearly 15 years later, in June 2005, the Union demanded that Combs submit to a payroll audit pursuant to the 1981 MOA. (DE 24, Ex. 4). Combs responded on July 14, 2005 with a letter to the Union stating that Combs did not have a valid collective bargaining agreement with the Union. (DE 24, Ex. 6). In the July 2005 letter, Combs explained its belief that the 1981 MOA was invalid because the bookkeeper (Mr. Rider) had no authority to bind the corporation to contracts and cited the fact that the Union had slept on its rights since Combs had no union employees for at least 15 years. (DE 24, Ex. 6).

The Union evidently dropped the matter – at least there is no evidence to the contrary – and nearly four more years quietly passed by. It wasn't until March 11, 2009, that Combs received a letter from the Union which provided notice of an alleged violation of "our Collective Bargaining Agreement" – the claim being that Combs was using non-union subcontractors at one of its job sites. (DE 24, Ex. 7). The Union contends that this conduct violated the 2006 CBA, a successor agreement between the Union and the Northwest Indiana Contractors Association, to which the 1981

MOA ostensibly bound Combs. (DE 24, Ex. 11). The Union sought to arbitrate the grievance , (DE 24, Ex. 11–12), but after this action was brought, I ordered the cancellation of scheduled arbitration proceedings and enjoined those proceedings until the issues presented by this action are resolved. (DE 8).

**DISCUSSION**

This matter is before me on Combs' motion for summary judgment. Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c)(2); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009); *Branham v. Snow*, 392 F.3d 896, 901 (7th Cir. 2004). When examining the evidence, the Court should resolve all ambiguities and draw all inferences in favor of the non-moving party. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).

**A.     Jurisdiction**

There is an initial question of whether I have jurisdiction. Section 301 of the Labor Management Relations Act "confers federal subject-matter jurisdiction only over '[s]uits for violation of contracts.'" *Textron Lycoming Reciprocating Engine Div. v. United Automobile, Aerospace & Agricultural Implement Workers of Am.*, 523 U.S. 653, 656 (1998) (quoting 29 U.S.C. § 185(a)). Based on this statutory language, the Supreme Court held that section 301 does not provide federal subject-matter jurisdiction for suits merely seeking a finding that a contract is invalid. *Id.* at 657. The Supreme Court nonetheless determined that employers accused of violating

4

a CBA may seek a declaratory judgment from a federal court invalidating the CBA, because it is the underlying grievance that causes the employer to assert an invalid contract as its defense. *Id.* at 658; *J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers*, 398 F.3d 967, 973 (7th Cir. 2005). Because Combs filed suit seeking a declaratory judgment regarding the validity of the 2006 CBA in direct response to the Union's allegations of a grievance under the 2006 CBA, this suit constitutes an action "for violation of contracts" under section 301.

**B.      Combs' Right to a Declaratory Judgment**

In order for the Union to pursue the alleged 2009 grievance, Combs must be a party to the 2006 CBA. The Union contends that the 2006 CBA represents a successor agreement to the 1981 MOA, which specifically included an evergreen clause that bound Combs to all successor agreements unless the Union or Combs provided written notice of termination of the MOA at least three months prior to the expiration of the CBA. The key to the Union's stance is the validity of the 1981 MOA and the lack of any subsequent termination of the agreement by Combs.

Combs does not dispute that its bookkeeper, Robert Rider, executed the 1981 MOA. Instead, it argues that the 1981 MOA is void because Rider did not have authority to bind the corporation to any contract, including a collective bargaining agreement. I need not resolve that issue because I find that even if the 1981 MOA were a valid contract, it has been repudiated under the "one-man unit" rule which invalidates the CBA because Combs did not employ any Union members since sometime around 1990. I also find that the CBA lapsed before 2009 based on the Union's conduct, including its failure to seek compliance with the CBA and to communicate with Combs for extended periods of time. Finally, and in any event, laches also bars the Union's claims related to the 2006 CBA.

5

### 1. Termination or Repudiation of the MOA before the 2006 CBA

Combs contends that it effectively terminated its obligations under the MOA before the 2006 CBA. A subsidiary question here is whether the 1981 MOA included an "evergreen clause," which would have bound Combs to successor CBAs through 2009 when the grievance at issue arose. An "evergreen clause" is a clause which automatically renew the terms of the contract, binding the parties unless one party terminates the contract. *Operating Eng'rs Local 139 Health Benefit Fund v. Gustafson Constr. Co.*, 258 F.3d 645, 649 (7th Cir. 2001). An evergreen clause exists in the plain language of the 1981 MOA. The 1981 MOA reads:

> 2. The parties [*i.e.*, Combs & Sons and the Union] do hereby adopt the latest Agreement, and all approved amendments thereto **and any future Agreements** between the UNION and the [multi-employer bargaining unit]...and agree to be bound by all of the terms and conditions thereof for the duration of such Agreement **and any future Agreements and for the period of any subsequent extensions including any amendments which may be subsequently made**........
>
> 4. Either party desiring to amend or terminate this Memorandum of Agreement must notify the other in writing at least three (3) calendar months prior to the expiration of the Master Agreement adopted therein.

(DE 24, Ex. 1) (emphasis added).

Combs claims that it terminated the 1981 MOA in its 2005 letter such that it was not a party to the 2006 CBA. To effectively terminate a contract containing an evergreen clause, notice of the termination must be clear and unequivocal. *See Todd v. Corporate Life Ins. Co.*, 945 F.2d 204, 208 (7th Cir. 1991); *Morris Silverman Mgmt. Corp. v. W. Union Fin. Servs.*, 284 F. Supp. 2d 964, 974 (N.D. Ill. 2003). Combs' July 2005 letter appears to be the first instance of communication to the Union rejecting the validity of any collective bargaining agreement. In the July 2005 letter, an attorney for Combs stated that it is "L.I. Combs & Sons, Inc.'s position that it does not have a valid collective bargaining agreement with your client [*i.e.,* the Union]...." (DE 24, Ex. 6). The Union

contends that this letter does not seek to amend or terminate the 1981 MOA. The Union further contends that it has no knowledge of any other communication seeking to amend or terminate the MOA. This is a close call but ultimately I agree with the Union that the statement in the July 2005 letter does not constitute direct notice of termination according to the provisions of the 1981 MOA. There was no reference to the termination clause of the 1981 MOA and no use of the word "terminate." The July 2005 letter cannot properly be construed as effectively invoking the 1981 MOA's termination provisions.

But whether Combs formally terminated the agreement is neither here nor there because there is another basis to get out from under the contract. The July 2005 letter expressly states the corporation's belief that the 1981 MOA was not binding upon it, and thus implies Combs' intent to repudiate any agreement that may have existed. Regardless of any formal termination of the 1981 MOA pursuant to its terms, Combs was within its rights to repudiate its contract with the Union based upon the "one-man unit" rule.

The "one-man unit" rule allows an employer who employs one or fewer permanent bargaining unit employees to repudiate its contract with the union without violating the Labor Management Relations Act. *J.W. Peters, Inc.*, 398 F.3d at 975. In *J.W. Peters*, the court outlined several NLRB cases where the NLRB applied the "one-man unit" rule. The NLRB justified the rule in *Foreign Car Center, Inc.*, 129 NLRB 319, 320 (1960) based upon "the principle of collective bargaining [that] presupposes that there is more than one eligible person who desires to bargain." *Id.* at 973. Applying the rule, the NLRB found employers with two or fewer bargaining unit employees within their rights to repudiate the applicable collective bargaining agreement. *See Haas Garage Door Co.*, 308 NLRB 1186 (1992) (finding no violation of labor law when an employer,

7

who had signed a CBA through the multi-employer bargaining unit of which it was a member, repudiated the CBA because it had no more than one unit employee at all the material times); *Garman Constr. Co.*, 287 NLRB 88, 89 (1987) (finding Garman's repudiation of its collective bargaining agreement in "a letter to the union stating that the agreement 'is null and void as of the present date'" to be lawful based on the one-man unit rule).

The Union argues that the "one-man unit" rule does not apply in this case because Combs did employ more than one unit employee in 2009 at the time of the alleged grievance. However, the effective repudiation occurred in 2005. The collective bargaining agreement did not survive until 2009 because, as the Union fails to dispute, Combs did not employ any bargaining unit employees from at least 1990 to 2005. *See* DE 24, Ex. 6. Applying the "one-man unit" rule, Combs successfully repudiated its agreement with the Union in its July 2005 letter. Therefore, the subsequent 2006 CBA never bound Combs, making it irrelevant whom Combs employed in 2009.

### 2. *Lapse of the CBA*

The legal theory of lapse also applies to support judgment as a matter of law in favor of Combs. The conduct of the parties implied that no agreement existed between the parties by June 2005. A contract can be implied in fact when the conduct of the parties infers a meeting of the minds, even in the absence of an express contract. *Sullivan v. Randolph*, 504 F.3d 665, 668 (7th Cir. 2007); *Bricklayers Local 21 of Ill. Apprenticeship & Training Program v. Banner Restoration, Inc.*, 385 F.3d 761, 766 (7th Cir. 2004). Courts have bound employers to collective bargaining agreements based on conduct such as "payment of union wages, the remission of union dues, the payment of fringe benefit contributions, the existence of other agreements evidencing assent and the submission of the employer to union jurisdiction." *Bricklayers*, 385 F.3d at 766; *see, e.g.*, *Sullivan*,

504 F.3d at 668. Conversely, collective bargaining agreements can lapse based upon the conduct of the parties. *See, e.g.*, *Chicago Dist. Council of Carpenters Pension Fund v. Hunter Alliance, Corp.*, 1998 WL 155928 at *2 (N.D. Ill. Mar. 30, 1998) (noting the NLRB's decision that a collective bargaining agreement lapsed due to "the absence of bargaining unit employees and absence of communication between the parties" for sixteen years).

Based on the undisputed facts, I find that the 1981 MOA and any of its successor agreements lapsed before June 1, 2006, when the 2006 CBA became effective. First, there is no evidence of any communication, employment of bargaining unit employees, or other interaction between the Union and Combs from approximately 1990 until 2005. In the July 2005 letter, Combs asserted that it had not employed unit employees and/or paid into union employee benefits under the 1981 MOA for at least the previous 15 years. (DE 24, Ex. 6). The Union made no reply disputing the company's assertion that there existed no valid and binding CBA.

Furthermore, the Union, outlining all of its correspondence with Combs in answer to an interrogatory, reveals no correspondence with Combs & Sons between June 1, 1981, when the MOA was executed, and June 15, 2005, when the Union's counsel sent the letter to Combs requesting an audit. (DE 24, Ex. 12 at 3–4). So at least from 1990, *but arguably from 1981*, through July 2005, there is no evidence that Combs: (1) employed bargaining unit employees, (2) paid union wages to bargaining unit employees, (3) remitted union dues, (4) paid fringe benefit contributions mandated by the 1981 MOA, or (5) otherwise submitted to union jurisdiction. Additionally, there is no evidence that the Union communicated with Combs on any matter or attempted to enforce the terms of the 1981 MOA. In fact, upon the Union's first effort to enforce the 1981 MOA in 2005, Combs refused to comply and denied the existence of any relationship with the Union. Even then, both

9

parties agree that the Union did not engage Combs further to ensure their compliance with the agreement. The next time that Combs heard from the Union was nearly four years later, when it informed Combs in 2009 of the alleged grievance that is the impetus for this action.

The 1981 MOA, and the successor CBAs it included, lapsed at some point before June 1, 2006, when the 2006 new CBA became effective. Both parties effectively repudiated the contract by their inaction between 1990 and 2005. There is no need to determine specifically when the 1981 MOA lapsed because 15 years of inaction is more than sufficient to give Combs the reasonable belief that the 1981 MOA was no longer in force.

### 3. *Laches*

Finally, there is yet another basis for judgment in favor of Combs – the equitable concept of laches. Laches applies when there is: (1) an "inexcusable delay in asserting a right," (2) "an implied waiver arising from knowing acquiescence in existing conditions," and (3) "a change in circumstances causing prejudice to the adverse party." *In re Bender*, N.E.2d 170, 184 (Ind. Ct. App.) (citing *Shriner v. Sheehan*, 773 N.E.2d 833, 846 (Ind. Ct. App. 2002), *trans. denied*); *see also Teamsters & Employers Welfare Trust of Ill. v. Gorman Bros. Ready Mix*, 283 F.3d 877, 883 (7th Cir. 2002) (indicating that laches is an allowable defense in ERISA cases). The undisputed facts of this case establish these elements.

To determine whether an inexcusable delay occurred, it is first necessary to identify the applicable statute of limitations. *Gorman Bros.*, 283 F.3d at 880. Indiana's two-year statute of limitations applies to "action[s] relating to the terms, conditions, and privileges of employment except actions based upon a written contract." Ind. Code. § 34-11-2-1. The Seventh Circuit has found this statute applicable to a union's Section 301 claim brought against an employer for alleged

10

breach of a collective bargaining agreement. So a claim for breach of the 1981 MOA would be subject to this limitations period. *See Int'l Union of Elevator Constructors v. Home Elevator Co.*, 798 F.2d 222, 223–24 (7th Cir. 1986). Despite a two year statute of limitations, the Union dragged its feet for at least 15 years and arguably much longer. This plainly amounts to inexcusable delay on the Union's part.

Second, the Union implied its waiver of the 1981 MOA through its acquiescence in Combs' non-union behavior from at least 1990 to 2005. What's more, Combs has been prejudiced by the Union's belated assertion that the 1981 MOA is still valid and governs its relationship with Combs. Combs would be penalized for its reliance upon the Union's acquiescence if the Union decided to enforce all the terms of the 1981 MOA and its successor agreements at this late date. How could Combs effectively defend actions it took decades ago? At bottom, the Union has slept on its rights, and so this is one of those rare cases where laches applies.

## CONCLUSION

There is no doubt that facts are missing from this story of twenty-nine years. However, the undisputed facts support judgment as a matter of law in favor of Combs & Sons, because the agreement represented by the 1981 MOA was effectively repudiated in 2005 under the "one-man unit" rule, and/or lapsed from a period of at least 15 years of non-activity, and/or is now subject to the defense of laches.

Accordingly, plaintiff's Motion for Summary Judgment (DE 24) is **GRANTED**.

The Clerk shall **ENTER JUDGMENT** in favor of plaintiff Combs & Sons declaring that Combs & Sons is not bound by the 2006 collective bargaining agreement and has no obligation to

11

arbitrate the grievance now asserted, and enjoining defendant Union and its representatives from any action or assertion to the contrary.

**SO ORDERED**.

Entered this 3rd day of November, 2010.

/s/ Philip P. Simon
CHIEF JUDGE
UNITED STATES DISTRICT COURT